[No. F025031. Fifth Dist. Mar. 14, 1996.]

DEBORAH S., Petitioner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
STANISLAUS COUNTY DEPARTMENT OF SOCIAL SERVICES, Real
Party in Interest.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II.

**COUNSEL**

Grisez, Orenstein & Hertle and Robert L. Forkner for Petitioner.

No appearance for Respondent.

Michael H. Krausnick, County Counsel, and Linda S. Macy, Deputy County Counsel, for Real Party in Interest.

OPINION

**VARTABEDIAN, J.**—Petitioner Deborah S. seeks extraordinary writ review (Welf. & Inst. Code,[1] § 366.26, subd. *(l)*; Cal. Rules of Court, rule 39.1B) from respondent court's order that a section 366.26 hearing be held March 19, 1996. The court set the permanency planning hearing after denying the mother reunification services as to her son, Rafael B., pursuant to section 361.5, subdivisions (b)(5) and (6), and her other children, Israel B., Jr., Marcus B., and Senita B., pursuant to section 361.5, subdivision (b)(6), based on the mother's repeated physical abuse of Rafael. The mother raises a wide range of arguments challenging the court's decision to deny services. We conclude the court did not err.

FACTS

In June 1995, real party in interest Stanislaus County Department of Social Services (Department) detained and initiated dependency proceedings with respect to Israel, Jr. (born December 18, 1989), Rafael (born December 17, 1990), Marcus (born March 24, 1993), and Senita (born January 29, 1995). According to the petitions filed by the Department, Israel, Jr., Marcus and Senita had suffered, or there was a substantial risk they would suffer, serious physical harm inflicted nonaccidentally by their parent (§ 300, subd. (a)); they had suffered, or there was a substantial risk they would suffer, serious physical harm (§ 300, subd. (b)); they had been left without any provision for support (§ 300, subd. (g)); they had been subjected to acts of cruelty by the parent (§ 300, subd. (i)); and their sibling had been abused or neglected, as defined in section 300, subdivision (a), (b), (d), (e), or (i) and there was a substantial risk that they would be similarly abused or neglected. Specifically, the Department alleged:

"a-1   On June 19, 1995, while in the care and custody of his mother, Deborah [S.], the minor's sibling, Rafael [B.], was found to have the following injuries:

"a)   Old fracture of the right ankle.

"b)   New fracture of the right elbow.

"c)   Large scar under the left eye.

"d)   Broken blood vessels in the left eye.

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

"e)   Swelling and bruising to both sides of face.

"f)   Swollen right eye.

"g)   Swelling to the right upper lip.

"h)   Two missing front teeth.

"i)   Gash under the chin with multiple bruising.

"j)   Multiple bruises and scars in various degrees of healing to both legs, especially the knees.

"k)   Circular scar around left ankle.

"l)   Multiple bruises in various stages of healing on the stomach.

"m)   Two bruises on the chest.

"n)   Circular scar around right wrist.

"o)   Multiple bruises and scars down the length of the left arm.

"p)   Bruising under right arm.

"q)   Eight healed scalp lacerations.

"r)   Multiple bruises on buttocks.

"a-2   The mother has willfully withheld food from Rafael for extended periods of time.

"a-3   According to medical opinion, Rafael's injuries were inflicted non-accidentally over a prolonged period of time.

"a-4   On several occasions, since April 1995, the mother has willfully concealed Rafael from Child Protective Services and law enforcement during investigations of alleged abuse in order to avoid detection of his injuries.

"b-1   The father, Israel [B.], has observed injuries on Rafael and has witnessed the mother striking and kicking the children, but took no action to protect them.

"b-2   The father has a history of violence and has previously inflicted injuries upon the mother.

"b-3 The father has a history of substance abuse and is currently on felony probation for smuggling drugs into jail.

"b-4 The minor, Senita [B.], born six weeks prematurely, requires the use of an apnea monitor; however, the mother has failed to use said monitor.

"g-1 The mother is currently incarcerated charged with a violation of 273(A) of the California Penal Code, a felony.

"i-1 The mother has confined the sibling, Rafael, to his room for prolonged periods of time.

"i-2 The mother allows Rafael to sit in his own waste for extended periods.

"i-3 On numerous occasions, the mother has tied Rafael's ankles and wrists together to restrain him and has put a sock in his mouth to prevent him from screaming.

"i-4 The mother has confined Rafael in a darkened closet for extended periods of time.

"i-5 The mother has confined Rafael to his crib by placing a board across the top held down by a weight. While confined to his crib, the mother has jabbed Rafael with a screwdriver through the crib's slats.

"j-1 The minor's sibling, Rafael [B.], has been previously abused in that on December 8, 1992, Rafael was adjudged a dependent of the Court after sustaining five fractures and multiple bruising while in the care and custody of his parents."

While the Department also alleged Rafael came within the provisions of section 300, subdivisions (b), (g) and (i), it further pled he was under the age of five and had suffered severe physical abuse by a parent, or by any person known by the parent, and the parent knew or reasonably should have known that the person was physically abusing the child.

After numerous continuances, respondent court set the matter for a November 29th jurisdictional hearing. At the November 29th hearing, the Department submitted the matter on its jurisdictional and dispositional report. Counsel for the mother in turn requested a continuance of possibly two weeks. Counsel explained the mother's preliminary hearing was set for December 14th. He was hesitant to proceed "before any finding is made

downtown." By continuing the matter until December 15th, counsel added: "a full, I guess, mini-trial on the merits can at least be had up to the point of where I can see where the case is going to be going." The court denied counsel's request.

Counsel for the mother in turn submitted the matter on the report. The court found Israel, Jr., Senita and Marcus were children described in section 300, subdivisions (a), (b), (g), (i), and (j) and Rafael was a child described in section 300, subdivisions (b), (e), (g), (i) and (j).[2]

The court then raised the subject of disposition. The Department had recommended denying the parents reunification services as to Rafael pursuant to section 361.5, subdivision (b)(5).[3] It, however, recommended extending services to the parents with regard to the remaining three children. Despite the Department's recommendation, the court expressed its inclination to deny the parents services as to any of the children based upon its reading of section 361.5, subdivision (b)(6).[4] It continued the disposition hearing to the following day to enable counsel to research the issue.

The following day the court entertained argument on the issue of section 361.5, subdivision (b)(6). While the Department favored denying the parents any services, the deputy county counsel assigned to the case expressed her view that the subdivision would not support the court's position. Without

---

[2]Even though there was no section 300, subdivision (a) allegation as to Rafael, the court inadvertently also found Rafael to be a child described in section 300, subdivision (a).

[3]Section 361.5, subdivision (b)(5) provides:

"(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(5) That the minor was brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent or guardian."

[4]Section 361.5, subdivision (b)(6) provides:

"(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(6) That the minor has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse or the infliction of severe physical harm by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"A finding of the infliction of severe physical harm, for the purposes of this subdivision, may be based on, but is not limited to, deliberate and serious injury inflicted to or on a child's body by an act or omission of the parent or guardian, or of another individual or animal with the consent of the parent or guardian; deliberate and torturous confinement of the child in a closed space; or any other torturous act or omission which would be reasonably understood to cause serious emotional damage."

reference to section 361.5, subdivision (b)(6), counsel for the minors urged the court to deny all services. Counsel for the mother specifically objected to any denial of services as to Israel, Jr., Senita and Marcus.[5]

After the matter was submitted, the court adjudged each of the children dependents and ordered their removal from parental custody pursuant to section 361, subdivision (b)(1). In addition, the court denied the parents reunification services as to Rafael pursuant to section 361.5, subdivisions (b)(5) and (6), and as to the other children under section 361.5, subdivision (b)(6). It in turn set a section 366.26 permanency planning hearing for March 19, 1996.

The mother filed a timely notice of intent to file a writ petition.

## DISCUSSION

### I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. *Section 361.5, Subdivision (b)(6)*

■ The mother contends respondent court erroneously applied section 361.5, subdivision (b)(6) in denying her reunification services as to her three other children.[9] On review, we hold pursuant to section 361.5, subdivision (b)(6), a parent who, by act or omission, deliberately inflicts severe physical harm on one child is not necessarily entitled to services to reunify with that child or any other child who has been adjudged a dependent under section 300 as a result of such abuse.

#### *Must the minor personally suffer the serious physical harm?*

From the mother's point of view, a court may only deny a parent services as to her child under section 361.5, subdivision (b)(6) if that child personally

---

[5]County counsel asks this court to interpret counsel's silence as to Rafael as a waiver of any claim for services as to Rafael. She cites our opinion in *In re Richard K.* (1994) 25 Cal.App.4th 580, 587-590 [30 Cal.Rptr.2d 575]. In *Richard K.,* the issue was the effect of an express submittal on a department's report and recommendation. That is not the issue here. County counsel also cites *In re Kevin S.* (1996) 41 Cal.App.4th 882, 886 [48 Cal.Rptr.2d 763], in which an appellate court recently held failure to argue an issue in the juvenile court constituted a waiver of the issue on review. We are not persuaded by the strict position taken in *Kevin S., supra.* In our view, it only encourages a claim of ineffective assistance of trial counsel. (§ 317.5.).

*See footnote, *ante*, page 741.

[9]We will limit our discussion of section 361.5, subdivision (b)(6) by virtue of the facts in this case to issues involving severe physical harm inflicted by a parent. We do not address the alternative ground of severe sexual abuse under section 361.5, subdivision (b)(6).

suffered serious physical harm or abuse inflicted by the parent. Here, she points out there was no allegation or finding that Israel, Jr., Senita, or Marcus personally suffered such harm or abuse.

The mother's contention is a question of first impression. Indeed, not only is there no case law on the topic, there is apparently no relevant legislative history. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Nevertheless, we find subdivision (b)(6) on its face applies to this factual situation.

As previously quoted, section 361.5, subdivision (b)(6) provides in pertinent part:

"(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(6) That *the minor has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of* severe sexual abuse or the infliction of *severe physical harm by a parent or guardian, as defined in this subdivision*, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"A *finding of the infliction of severe physical harm*, for the purposes of this subdivision, *may be based on*, but is not limited to, *deliberate and serious injury inflicted to or on a child's body by an act or omission of the parent* or guardian, or of another individual or animal with the consent of the parent or guardian; deliberate and torturous confinement of the child in a closed space; or any other torturous act or omission which would be reasonably understood to cause serious emotional damage." (Italics added.)

Notably, in drafting section 361.5, subdivision (b)(6), the Legislature referred to both "the" minor and "a" child. As referred to in subdivision (b)(6), "the" minor is the juvenile dependent as to whom reunification services are at issue. "A" child, by contrast, is one who in relevant part has sustained deliberate and serious injury inflicted by an act or omission of the parent.

While "the" minor in section 361.5, subdivision (b)(6) must be adjudicated a juvenile dependent, in relevant part, as a result of a parent's infliction

of severe physical harm, there is no expressed requirement in subdivision (b)(6) that the same minor personally suffer the severe physical harm. Instead, the section provides a finding of the infliction of severe physical harm may be based on deliberate and serious injury inflicted to or on "a" child's body by the parent's act or omission. Thus, it appears "the" minor referred to in subdivision (b)(6) does not necessarily have to be the same person upon whom the deliberate and serious injury is inflicted by the parent's act or omission.

We note section 361.5, subdivision (h) refers to the harm suffered by "the" child.[10] However, this language does not cause us to reconsider our holding regarding the breadth of section 361.5, subdivision (b)(6). The factors outlined in subdivision (h) go to whether it would nevertheless benefit the child to pursue reunification services with the offending parent. Thus, when the court finds the minor has been adjudicated a dependent as a result of the infliction of severe physical harm by a parent even though the minor did not personally suffer severe physical harm, the court may take the lack of personal harm to the child into account in deciding whether services would be beneficial.

Nevertheless, the mother in this case would have this court overlook the Legislature's choice of words. However, she fails to cite any persuasive reason why this court should do so. She also ignores the fact that a literal interpretation of subdivision (b)(6) in the context of the balance of subdivision (b) does not yield absurd or arbitrary results. (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].)

Section 361.5, subdivision (b) symbolizes the Legislature's recognition of the fact that it may be fruitless to provide reunification services under certain circumstances. (*In re Rebecca H.* (1991) 227 Cal.App.3d 825, 837 [278 Cal.Rptr. 185].) Those circumstances include when: the parent's whereabouts are unknown (§ 361.5, subd. (b)(1)); the parent suffers from a mental disability that renders him or her incapable of utilizing reunification services

---

[10]Section 361.5, subdivision (h) provides:

"In determining whether reunification services will benefit the child pursuant to paragraph (6) of subdivision (b), the court shall consider any information it deems relevant, including the following factors:

"(1) The specific act or omission comprising the severe sexual abuse or the severe physical harm inflicted on the child.

"(2) The circumstances under which the abuse or harm was inflicted on the child.

"(3) The severity of the emotional trauma suffered by the child.

"(4) Any history of abuse of other children by the offending parent or guardian.

"(5) The likelihood that the child may be safely returned to the care of the offending parent or guardian within 18 months with no continuing supervision.

"(6) Whether or not the child desires to be reunified with the offending parent or guardian."

(§ 361.5, subd. (b)(2)); the minor has been removed a second time in the course of the same dependency on account of physical or sexual abuse (§ 361.5, subd. (b)(3)); the minor's parent has been convicted of causing the death of another child through abuse or neglect (§ 361.5, subd. (b)(4)); and the minor is under the age of five and has suffered severe physical abuse under section 300, subdivision (e) because of that parent's conduct (§ 361.5, subd. (b)(5)).

Section 361.5, subdivision (b)(6) in relevant part provides that parents who, by act or omission, inflict severe physical harm on a child also do not necessarily deserve a second chance. In this situation, the right to reunification services, outlined in section 361.5, subdivision (a), does not accrue to such an offending parent unless the court finds it would benefit the dependent child to pursue reunification services with that parent. Inherent in this subdivision appears to be a very real concern for the risk of recidivism by the parent despite reunification efforts.

However, an abusive parent's risk of recidivism is not necessarily limited to a child who was the parent's previous victim. The parent may very well pose a serious threat to his or her other children. The Legislature appears to have recognized this sad circumstance in its drafting of section 361.5, subdivision (b)(6). The child who is not personally harmed but who is adjudicated a dependent under section 300 due to a parent's infliction of severe physical harm is at least at a substantial risk of suffering serious physical or emotional harm. (See § 300, subds. (a), (c), (i) & (j).)

Thus, as a matter of public policy, this exception to the general rule favoring reunification services appears neither absurd nor arbitrary. (*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260].) Respondent court therefore did not err by determining Israel, Jr., Marcus and Senita came within the description of section 361.5, subdivision (b)(6).

### *Did the court fail to consider whether any of the children desired to be reunified?*

In order to deny services under section 361.5, subdivision (b)(6), the court, in addition to finding the minor has been adjudicated a dependent, in relevant part, as a result of the infliction of severe physical harm by a parent, must determine that it would not benefit the child to pursue reunification services with the offending parent.

The mother contends the court failed to consider, pursuant to section 361.5, subdivision (h)(6), whether any of the children desired reunification.

(See fn. 10, *ante.*) In this regard, she criticizes the minors' counsel for failing to make a record on this point or even disclosing whether he even interviewed the children. The record does not reveal anything about Israel, Jr.'s, Marcus's or Senita's desire or lack thereof for reunification with the mother.

Notably, Marcus and Senita were under the age of four at the time of these proceedings. Senita was under one and Marcus was less than three years of age. Their young age is significant because it is only after a minor is four years or older that the statutory scheme requires minor's counsel to interview his or her client to determine the minor's wishes. (§ 317, subd. (e).) Inherent in this mandate appears to be a recognition of a preschooler's limited ability to communicate, not to mention the difficulty in questioning children under the age of four. In the case of Israel, Jr., who was almost six years old at the time, we must assume in the absence of record evidence to the contrary that his counsel complied with the code's mandate and consulted, to the extent feasible, with Israel, Jr., before urging the juvenile court to deny services. (See *In re Jesse B.* (1992) 8 Cal.App.4th 845, 853 [10 Cal.Rptr.2d 516].) Finally, there is no requirement in section 317 or elsewhere that minor's counsel make a record of any interview conducted with the minor. Thus, there is no evidence of any error in this regard.

*Did the court fail to state a factual basis for its section 361.5,*
*subdivision (b)(6) determination?*

Subdivision (i) of section 361.5 requires the court to read into the record the basis for a finding of severe sexual abuse or the infliction of severe physical harm under paragraph (6) of subdivision (b), and also specify the factual findings used to determine that the provision of reunification services to the offending parent or guardian would not benefit the child. According to the mother, the record does not include factual findings on the question of benefit.

The record discloses otherwise. The court repeatedly remarked services would not benefit the children because the parents had previously undergone extensive parenting counseling such that their counselors believed the parents had assimilated the knowledge and could safely parent and, nevertheless, the atrocities continued. As the court poignantly explained,

"In good faith there was—after the previous dependency, all services that I can possibly think of that we have available for reunification processes were offered to this family and we have a child that but for the intervention this time may well . . . had died at the hands of the parent or parents if there had been no intervention.

"I can't for the life of me figure that what reunification services that we could offer to these people that would make them parents that one would feel safe—as I said yesterday—in sending any living creature back into their home."

Thus, the court did expressly find that based on the ineffectiveness of prior reunification efforts that further reunification attempts would not benefit the children.

## DISPOSITION

The petition is denied. Our decision is final forthwith as to this court.

Martin, Acting P. J., and Stone (W. A.), J., concurred.

A petition for a rehearing was denied April 2, 1996, and petitioner's application for review by the Supreme Court was denied May 22, 1996.