Filed 12/19/13  C.C. v. Super. Ct. CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| C.C.,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>ORANGE COUNTY SOCIAL SERVICES AGENCY et al.,<br><br>    Real Parties in Interest. | G049048<br><br>(Super. Ct. No. DP018663)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Kimberly Menninger, Judge. Petition denied.

Frank Ospino, Public Defender, Dave Dziejowski, Assistant Public Defender, Geraldine Wong and Dennis M. Nolan, Deputy Public Defenders, for Petitioner.

Nicholas S. Chrisos, County Counsel, and Karen L. Christensen, Deputy County Counsel, for Real Party in Interest, Orange County Social Services Agency.

Rebecca Captain, under appointment by the Court of Appeal, for the Minor, A.C.

\*          \*          \*

C.C. (mother) seeks extraordinary relief (Cal. Rules of Court, rules 8.450, 8.452) from the juvenile court's orders bypassing reunification services concerning her daughter A.C., born in March 2003, (Welf. & Inst. Code, § 361.5, subds. (b)(10), (11); all statutory references are to this code unless otherwise indicated) and scheduling a section 366.26 selection and implementation hearing for January 15, 2014. Mother contends there is insufficient evidence to support the court's finding she had not made reasonable efforts to treat the problems that led to a failure to reunify with another child removed from her custody in 2006. Having reviewed the petition on the merits, we deny the requested relief.

I

FACTS AND PROCEDURAL BACKGROUND

In December 2006, San Diego social workers filed a section 300 petition concerning mother's son J.D., born in December 2006. The petition alleged mother had a history of drug use, used drugs during her pregnancy, tested positive for methamphetamine, amphetamine and marijuana at J.D.'s birth, and there was a substantial risk the child would suffer serious physical harm or illness in mother's care (§ 300, subd. (b)). Mother received reunification services, but in January 2010, the San Diego juvenile court terminated mother's parental rights to J.D.

In June 2009, the Orange County Social Services Agency (SSA) filed a section 300 petition concerning mother's children S.M. (born April 1998), J.M. (January 2001), A.C. (March 2003), A.M. (June 2005), and T.M. (June 2008). The petition alleged mother had been arrested for child cruelty after leaving eight-year-old J.M. to

2

care for younger siblings in a motel room while mother "h[u]ngout with friends" in another room. A.M. was found wandering the motel grounds, and a man mother had just met was intoxicated and passed out in mother's motel room with J.M. and A.C. The motel room was messy and unclean, and there was insufficient food for the children. Mother had tested positive for drugs in 2008 and her alcohol and drug problems remained unresolved. The family had been transient since March 2009. Mother had a criminal record, including convictions for child cruelty and domestic violence. One of the children's fathers used methamphetamine, had a felony record, and had been deported to Mexico. A.M. had tuberculosis (TB) requiring hospitalization, and the other children tested positive for exposure to TB and required prophylactic medication. Two of the older children received mental health diagnoses, and A.C. was particularly troubled. Mother's school age children had not regularly attended school and stood academically far behind their peers.

The social worker recommended bypassing reunification services. In late August 2009, mother pleaded no contest to the allegations of the petition as amended. At the disposition hearing in December 2009, the court formally removed the children from mother's custody (§ 361), but adopted a reunification case plan. Among other requirements, the case plan directed mother to meet her children's needs and provide a safe home, stay sober, and live free from alcohol and drug dependency, comply with conditions of her probation or parole, participate in counseling with an SSA approved therapist, complete a parenting education class, submit to random drug and alcohol testing, and complete an SSA approved drug treatment program if any tests were positive.

In October 2010, the court returned the children to mother under continued supervision with wraparound services. A.C. continued to manifest aggressive behaviors, which forced mother to drop out of a substance abuse treatment program. Nevertheless, at a review hearing in April 2011, the court adopted the social worker's recommendation and terminated dependent child proceedings.

3

In May 2013, SSA filed a new section 300 petition alleging mother had failed to supervise the children and had neglected them by failing to provide them with clean clothing and hygiene, and a clean home. The petition also alleged mother failed to ensure the children regularly attended school. The children, particularly A.C., had exhibited behavioral and criminal issues at home and school. Several reports surfaced concerning A.C. T.M. reported A.C. was sexually abusing him. There were reports mother struck A.C. with a cord and belt causing bruises. On May 25, A.C. "punched a window" during an argument with mother requiring a hospital visit, and A.C. was subsequently transferred to a behavioral medical center.

In early June 2013, the court detained the children and released all except A.C. to mother under a conditional release (CRISP) agreement. But mother soon violated the CRISP release agreement. Mother's probation officer reported mother tested positive for methamphetamine on June 4, 2013, missed other tests, and had failed to report for appointments. During a home visit, the probation officer found mother associating with two men who had drug convictions. One of these men was suspected of sexually abusing A.C. S.M. reported seeing drugs in the home and stated "a lot of men came into the home and some of them could have done things to" A.C. Mother also left J.M. and A.M. unattended. School officials reported mother's children had ongoing behavior problems and unexcused absences and tardiness.

In July 2013, SSA filed a new section 300 petition (§ 300, subds. (b) & (j)) incorporating subsequent developments. In early August, mother submitted on the allegations of the petition and SSA's reports. The court admitted SSA's reports, found the petition's allegations true, and exercised jurisdiction over the children.

In SSA's August 8, 2013 report, the social worker stated mother had received a 365-day jail term and an extended probationary period. A.C. had begun counseling at UCI Focus, and several of the other children were in therapy. The social

4

worker nevertheless recommended reunification services. A.C.'s lawyer objected, arguing reunification bypass provisions applied.

On September 17, 2013, following a contested disposition hearing, the juvenile court found by clear and convincing evidence reunification services need not be provided to mother and A.C. because the court had previously ordered termination of reunification services for A.C.'s half sibling J.D., and mother had not subsequently made a reasonable effort to treat the problems that led to J.D.'s removal. (§ 361.5, subd. (b)(10) & (11).)

II

DISCUSSION

Mother challenges the sufficiency of the evidence to support the juvenile court's order denying her reunification services under subdivisions (b)(10) and (11) of section 361.5. The record, however, contains ample substantial evidence to support the findings.

Section 361.5, subdivision (b) provides, "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: . . . (10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian. [¶] (11) That the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent described in subdivision (a), and that, according to the findings

5

of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent."

Section 361.5, subdivision (b) is a legislative acknowledgement "that it may be fruitless to provide reunification services under certain circumstances." (*Deborah S. v. Superior Court* (1996) 43 Cal.App.4th 741, 750.) In enacting section 361.5, subdivisions (b)(10) and (11), "the Legislature has made the decision that in some cases, the likelihood of reunification is so slim that scarce resources should not be expended on such cases." (*Riverside County Dept. of Public Social Services v. Superior Court* (1999) 71 Cal.App.4th 483, 488; see *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [the Legislature recognizes it may be fruitless to provide reunification services under certain circumstances].) "Inherent in this subdivision appears to be a very real concern for the risk of recidivism by the parent despite reunification efforts." (*Deborah S. v. Superior Court, supra,* 43 Cal.App.4th at p. 751.) A court reviews an order denying reunification services under section 361.5, subdivision (b) for substantial evidence. (*A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242; *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 600.)

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing evidence, the reviewing court must determine if there is any substantial evidence – that is, evidence which is reasonable, credible and of solid value – to support the conclusion of the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) All conflicts are to be resolved in favor of the prevailing party; issues of fact and credibility are questions for the trier of fact. (*Ibid.*; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

As the court explained in *R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, "We do not read the 'reasonable effort' language in the bypass provisions to mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made. [¶] Simply stated, although success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable." (*Id.* at pp. 914-915.)

Here, mother's problems were severe and persistent. In December 2006, mother's drug use prompted San Diego social workers to remove J.D. from her custody. In June 2009, SSA removed the children from mother's custody because of severe neglect, and it was evident mother had not resolved her substance abuse issues because she had tested positive for methamphetamine as recently as 2008. In December 2009, the court directed mother to meet her children's needs and provide a safe home, to stay sober and live free from alcohol and drug dependency, to comply with conditions of her probation, and to complete an SSA approved drug treatment program. The children had not regularly attended school and they were academically far behind their peers. In October 2010, the court returned the children to mother even though mother had dropped out of her substance abuse treatment program.

But in 2013, SSA was required to file another petition because mother continued using drugs, including methamphetamine, and failed to supervise, protect, and provide for her children. Despite two courses of reunification services, mother's

parenting had not improved.  The family was arguably in a worse place in 2013 than it was in 2006.  A.C. reported mother's acquaintances had sexually abused her.  A.C. continued to exhibit severe behavioral and criminal issues at home and school.  A.C.'s counsel states A.C.'s behaviors are so severe she requires a constant chaperone, and that while she "requires the ultimate level of supervision . . . there is zero evidence mother[] would be able to provide" it.  Mother's prognosis for reunification with A.C. was poor. The juvenile court reasonably concluded additional reunification services would be fruitless.  (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 195.)  Substantial evidence supports the court's finding mother had not made a reasonable effort to treat the problems – drug abuse and associated neglect – that led to J.D.'s removal.

III

DISPOSITION

C.C.'s petition seeking extraordinary relief from the juvenile court's September 17, 2013 orders bypassing reunification services and setting a section 366.26 selection and implementation hearing for January 15, 2014 is denied, as is her request for a stay of the section 366.26 hearing.

ARONSON, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

FYBEL, J.

8