Filed 4/14/14  T.H. v. Superior Court CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| T.H., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, <br><br> Respondent. | B253312 <br><br> (Super. Ct. No. CK61784) <br><br> (Carlos E. Vasquez, Judge) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al., <br><br> Real Parties in Interest. | ORDER |

Writ petition to review order setting hearing under Welfare and Institutions Code section 366.26.  Carlos E. Vasquez, Judge.  Petition denied.

Eva E. Chick for Petitioner.

No appearance for Respondent.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Navid Nakhjavani, Deputy County Counsel for Real Party in Interest Los Angeles County Department of Children and Family Services.

_____

Petitioner T.H. (Father) seeks extraordinary relief from the juvenile court's order, made at the dispositional hearing after the juvenile court denied family reunification services, setting a hearing to consider selection and implementation of permanent plans for his five dependent children, 18-year-old J.J., 16-year-old D.G., 10-year-old I.H., seven-year-old I.G.H., and six-year-old J.H.[1]  We deny Father's petition on the merits.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Father and his family first became involved in the dependency system in 1997, when the Los Angeles County Department of Children and Family Services (Department) received a referral alleging that J.J. and D.G. were victims of physical abuse.  By 2003 the Department had received six additional referrals, some alleging neglect and others alleging physical abuse.  All of the referrals were closed without the filing of a petition to declare J.J. and D.G. dependents of the juvenile court.  (§ 300.)  An eighth referral in 2004 was substantiated, and Father and Mother agreed to participate in voluntary family maintenance services.

In 2006, following a ninth referral, the juvenile court sustained a section 300 petition alleging Mother and Father had physically abused J.J., D.G. and I.H.[3]  The

---

[1]  Welf. & Inst. Code, § 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.  All statutory references are to the Welfare and Institutions Code.

[2]  The children's mother, L.G. (Mother), has filed a "joinder" in Father's petition. We have deemed this document to be a statement of support for the position asserted and relief requested by Father, rather than a separate petition to review the juvenile court's order setting the section 366.26 hearing.  (Cal. Rules of Court, rule 8.452(a), (b); cf. *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1391 [although "standard practice" permits parties to join in each other's arguments, "joining in an argument is different from joining in a motion;" absent compliance with procedural requirements for a properly filed motion, party "joining" other party's motion lacks standing to seek relief from the court].)

[3]  The juvenile court found that Mother struck the children with belts and extension cords, and Father struck the children with belts and choked J.J. and D.G.

three children were removed from the care of Father and Mother and placed in foster care. On November 30, 2007, following 12 months of reunification services, the three children were returned to the custody of Father and Mother.

Two additional referrals alleging physical abuse were generated in 2008 and 2009, but neither of the referrals resulted in the filing of a section 300 petition. In 2010 the juvenile court sustained a section 300 petition alleging physical abuse as to all five children, who were removed from parental custody. In August 2012 the children were returned to Mother and Father.

In November of 2012 the Department received a thirteenth referral alleging that Father had physically abused D.G. by punching him and striking him with a bucket. On December 5, 2012 the Department filed a section 300 petition as to the children, alleging that Father had inflicted physical abuse on D.G.[4] In its report for the detention hearing, the Department indicated that police officers who arrived at the family home on November 30, 2012 in response to the referral reported they saw bruises on D.G. D.G. stated that Father was angry because D.G. had left the home the previous day without permission, and when D.G. returned Father threw an object at him which hit him between the eyes, and then Father hit him on the face repeatedly with closed fists. D.G. added that he did not want to return home and would prefer to go a foster home, because he was tired of being hit and did not feel safe. Mother stated that she heard Father speaking to D.G. in a "military-type tone," but she did not see Father hit D.G. J.H. told the social worker she did not witness the incident, but she saw D.G. crying. On December 5, 2012 the juvenile court ordered the children detained.

In its jurisdiction and disposition report submitted January 23, 2013, the Department indicated D.G. told the social worker that, on November 29, 2012, Father

---

[4] The Department also filed a supplemental petition (§ 387) as to D.G., as he was under the juvenile court's delinquency jurisdiction at the time the abuse allegations were reported. The record does not include a copy of the supplemental petition.

3

threw silverware and hit D.G. in the face, causing his nose to bleed. Six-year-old I.G.H. stated he had seen Father hit D.G. with a belt and with his hand. I.G.H. also stated that Mother had hit D.G. with a cane, and Mother, Father and D.G. had hit him with shoes and belts. Five-year-old J.H. stated she saw Father hit D.G. with a bucket, and both Father and Mother would hit J.H. with a belt, a cane or with their hands.

Mother denied seeing Father hit D.G. on November 29, 2012, but added, "I'm not saying this is not what happened." Father denied hitting D.G., alluded to D.G. getting hit by "some people," and stated D.G. was violent and defiant.

Angela A., the children's maternal aunt, told the social worker she had seen Father hit D.G. in the ribs, and D.G. was afraid to fight back. Angela A. added that Mother and Father would often be gone for days to a casino, leaving J.J. in charge of the other children. Angela A. stated she did not think it would be safe for the children to return to the family home.

The Department observed that, despite the provision of individual and conjoint counseling, Wraparound services[5] and other programs since 2005, the family situation had continued to deteriorate. The Department recommended the court declare the children dependents of the court and deny Father and Mother reunification services.

In subsequent reports the Department advised that, although Father and Mother had been provided with funds and other services to facilitate visitation, as of April 15, 2013 they had failed to appear for any visits, nor had they made any inquiry about the children's well-being.

On August 12, 2013 the Department reported that I.H., I.G.H. and J.H. were placed together, were thriving in their placement, and the caregivers believed the children should all be placed together. Neither Father nor Mother was participating in any services.

---

[5] The Wraparound program was established in 1997 to provide intensive services to children with complex needs, using a team approach.

The court held the jurisdiction hearing on August 12, 2013. After the court received the Department's various reports into evidence, counsel for Father moved to dismiss all allegations in the dependency petition except for those related to D.G., urging there was insufficient evidence to support the allegations. (§ 350, subd. (c).) The court observed that there were several discrepancies in the dependency petition and continued the matter to September 6, 2013 to enable the Department to file a corrected petition.

The Department thereafter filed an amended petition, and after two further continuances the adjudication hearing resumed on October 28, 2013.[6] D.G. testified regarding the November 2012 incidents, stating that when he entered the home on the night of November 29, 2012 the room was dark and something hit his nose, causing it to bleed. Next, Father began to swing his arms and hit him repeatedly with his fists. D.G. did not hit Father, but put his hands up to block the blows. D.G. had not been hit by anybody prior to his arrival at the home that evening. D.G. further testified Father began hitting him again on the morning of November 30, 2012, and also threw a plastic bucket at him. D.G. added that Father and Mother told him not to go to school on November 30, 2012, but he did so anyway; his teacher made a referral when he saw a cut on D.G.'s nose and bruises on his forehead.

On October 29, 2013, the juvenile court sustained the remaining counts in the dependency petition[7] and continued the matter to December 9, 2013 for a contested disposition hearing.

---

[6] Before hearing testimony, the court granted Father's motion to dismiss certain counts pertaining to I.G.H. and J.H., and otherwise denied the motion.

[7] The sustained counts in the petition read as follows:

"(a)(1), (b)(1), (j)(1): On 11/29/2012, . . . [Father] physically abused . . . [D.G.], by striking [D.G.]'s face with [Father]'s fists, inflicting swelling and bruising to [D.G.]'s head. [Father] threw an object at [D.G.]'s face, inflicting a laceration to [D.G.]'s nose. On 11/30/2012, [Father] repeatedly struck [D.G.]'s torso

5

In a Last Minute Information Report submitted to the juvenile court on December 9, 2013 the Department indicated that, although they had been provided with numerous services since 2005, Mother's and Father's abuse and cycle of violence toward the children was unabated. Neither parent had enrolled in any program since the date of adjudication. The Department assessed that Mother and Father could not be rehabilitated, and again recommended the court deny reunification services.

No testimony was taken at the disposition hearing on December 9, 2013. Counsel for the Department requested the court terminate reunification services for

---

with [Father]'s fists, causing [D.G.] to fall to the floor. [Father] struck [D.G.]'s head and torso with a bucket. Such physical abuse was excessive and caused [D.G.] unreasonable pain and suffering. [Mother] failed to protect [D.G.], in that [Mother] knew of the physical abuse of [D.G.] by [Father], allowed [Father] to reside in [D.G.]'s home and have unlimited access to [D.G.]. Such physical abuse of [D.G.] by [Father], and [Mother]'s failure to protect [D.G.], endangers [D.G.]'s physical health and safety, and places [D.G.] and [D.G.]'s siblings [J.J., I.H., I.G.H., and J.H.], at risk of physical harm, damage, danger, physical abuse and failure to protect.

"(a)(2), (b)(4): On or about October 2012 . . . [Mother] physically abused . . . [D.G.], by striking the child's body with a cane causing the child unreasonable pain and suffering. Such physical abuse of the child by [Mother] endangers [D.G.]'s physical health and safety and places [D.G.] and [his] siblings at risk of physical harm, damage, danger.

"(b)(2), (j)(2): On prior occasions in 2012 [Father] made an inappropriate plan for [care and supervision of I.H., I.G.H., and J.H.], in that Mother and Father left the children in the care of the children's sibling, [D.G.], who left the children alone, without adult supervision. Such an inappropriate plan for the children's care and supervision by [Mother] and [Father] endangers the children's physical health and safety, placing the children, and the children's sibling [J.J.], at risk of physical harm and damage.

"(b)(3): [Mother] created a detrimental home environment in that Mother and [Father] forced [J.J.] to remain home from school so that she can care for [I.H., I.G.H., and J.H.]. As a result of [J.J.]'s refusal to stay home from school, the mother asked [J.J.] to leave the home and not return. Such inappropriate plan for the [children]'s care and supervision by [Mother] and [Father] endangers the [children]'s physical health and safety, placing the [children] at risk of physical harm and damage."

6

Mother and Father, observing that J.J., D.G. and I.H. were declared court dependents for physical abuse by Mother and Father in 2006, they were later returned to the care of Mother and Father, were again removed in 2010 due to additional physical abuse, and were again returned to Father and Mother in August of 2012.

Counsel for J.J. and I.H. joined in the Department's request. Counsel for D.G. observed that, as to D.G., the case had technically reached the 18-month statutory limit for reunification, and reunification services as to D.G. should be terminated with a plan of long term foster care.

Counsel for I.G.H. and J.H. expressed uncertainty as to the proper disposition, but urged that I.G.H. and J.H. not be returned to their parents with the possibility that the parents could later file a petition for modification (§ 388) seeking additional reunification services. Father's counsel requested that I.H., I.G.H. and J.H. be returned to Father's custody.

After hearing argument, the court announced its decision to terminate reunification services for Mother and Father. The court observed that, over a period of years, Mother and Father had engaged in a pattern of continuing physical abuse which resulted in multiple sustained allegations of physical abuse. The court found that, under these circumstances, reunification services for Mother or Father would not be in the best interest of any of the children. The court then set the matter for a hearing pursuant to section 366.26.

## CONTENTIONS

Father principally contends (1) there was not substantial evidence to support the juvenile court's jurisdiction findings; (2) the juvenile court's order removing the children from Father's custody was not supported by the record; and (3) the juvenile court erred in denying reunification services.

7

**DISCUSSION**

1. *Substantial Evidence Supports the Juvenile Court's Jurisdiction Findings*[8]

The juvenile court assumed jurisdiction over the children under section 300, subdivisions (a), (b) and (j).[9] Specifically, under section 300, subdivision (a) the petition alleged that Father physically abused D.G. on November 29, 2012 by striking D.G.'s face with his fists, and on November 30, 2012 by throwing an object at D.G.'s face, inflicting physical injuries. The petition further alleged Father's physical abuse of D.G. placed D.G. and his siblings at risk of physical harm, damage, danger and physical abuse.

---

[8]    When we review the juvenile's court's findings under the substantial evidence standard, we inquire only whether there is any evidence, contradicted or uncontradicted, that supports the court's determination. We resolve all conflicts in support of the determination, indulge in all legitimate inferences to uphold the findings and may not substitute our deductions for those of the juvenile court. (*In re Katrina C.* (1988) 201 Cal.App.3d 540; *In re John V.* (1992) 5 Cal.App.4th 1201, 1212*; In re I.J.* (2013) 56 Cal.4th 766, 773; *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.)

[9]    Section 300 reads, in pertinent part, as follows: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: (a) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm. . . . (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . [¶] . . . [¶] (j) The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. . . . " (§ 300, subds. (a), (b), (j).)

The evidence before the court established Father physically abused D.G. on November 29 and 30, 2012, inflicting serious physical harm.[10] D.G. told the social worker that Father threw an object and hit D.G. in the face, causing his nose to bleed. J.H. did not witness the incident that occurred on November 29, 2012, but stated she saw Father hit D.G. with a bucket on November 30, 2012. The record thus shows the juvenile court properly found that Father's physical abuse of D.G. was not a one-time occurrence, a finding that is also supported by other evidence before the court: I.G.H. told the social worker he had witnessed Father hitting D.G. with his hands, a belt and a cane; Angela A. told the social worker she had seen Father hit D.G. in the ribs; J.H. reported Father had hit her with a belt, a cane and his hands; and finally, I.G.H. reported that Father would hit him with shoes and a belt.

The foregoing evidence fully supports the juvenile court's determination the children were minors described by section 300, subdivision (a). Although "the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824), the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135; *In re Troy D.* (1989) 215 Cal.App.3d 889, 899-900.) A parent's past conduct is a good predictor of future behavior. (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169-1170.) "Facts supporting allegations that a child is one described by section 300 are cumulative." (*In re Hadley B.* (2007) 148 Cal.App.4th 1041, 1050.) Here, the petition sustained by the juvenile court on October 29, 2013 was the third sustained petition based on physical abuse by Father, after numerous referrals to the Department. Moreover, Father denied responsibility for the physical abuse, indicating he was likely to resume his pattern of physical abuse without court intervention. (See *In re Carlos T.* (2009) 174 Cal.App.4th 795, 803.) In view of the

---

[10] Besides the bloody nose, D.G. suffered cuts and bruises sufficiently remarkable that D.G.'s teacher made a referral to the Department on November 30, 2012.

foregoing, we conclude the court properly exercised jurisdiction under section 300, subdivision (a).

Given our conclusion that substantial evidence supports jurisdiction under subdivision (a) of section 300, we need not address Father's further arguments that the evidence does not support a similar finding under subdivisions (b) and (j). When a dependency petition alleges multiple grounds for its assertion a minor comes within the juvenile court's jurisdiction, a reviewing court can uphold the juvenile court's finding of jurisdiction if any one of the statutory bases for jurisdiction enumerated in the petition is supported by substantial evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. (*Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875-876.)

2. *The Juvenile Court Properly Removed the Children From Father's Custody*

At the disposition hearing, the juvenile court may order a child removed from his or her parent's physical custody if it finds clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor . . . and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1).)

The parent "need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re Diamond H.*, *supra*, 82 Cal.App.4th at p. 1136.) The record contains ample evidence of physical abuse by Father, who has a history of prior involvement with the juvenile court and who either denied the most recent allegations or evaded them. Additionally, J.J., I.H., I.G.H. and J.H. had been returned to Father's custody just four months prior to the November 29 and 30, 2012 incidents after being

10

under juvenile court jurisdiction for two years, demonstrating that Father's previous participation in reunification services had been unsuccessful and the children could not be safely maintained in Father's home.

### 3. *Reunification Services Were Properly Denied to Father*

Recognizing that in certain categories of cases it is futile to provide reunification services, the Legislature has enacted provisions for "fast-track" permanency planning under specified circumstances. (See *Deborah S. v. Superior Court* (1996) 43 Cal.App.4th 741, 750-751, *Randi R. v. Superior Court, supra*, 64 Cal.App.4th at pp. 70-71.) One such situation is when "the child or a sibling of the child has been previously adjudicated a dependent pursuant to any subdivision of Section 300 as a result of physical . . . abuse, that following that adjudication the child had been removed from the custody of his or her parent or guardian pursuant to Section 361, that the child has been returned to the custody of the parent or guardian from whom the child had been taken originally, and that the child is being removed pursuant to Section 361, due to additional physical . . . abuse." (§ 361.5, subd. (b)(3).) When a case falls within any of these "fast-track" provisions, "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources" (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478); and the juvenile court lacks power to order reunification unless it finds, by clear and convincing evidence, that reunification is in the child's best interest. (§ 361.5, subd. (c), 2d par.)

Here, J.J., D.G. and I.H. were made court dependents in 2006 and removed from their parents' custody as a result of physical abuse by Mother and Father and were subsequently returned to parental custody in 2007. In 2010 the juvenile court sustained a second dependency petition alleging physical abuse. The children were removed from Mother and Father, and returned to parental custody in August 2012.

Just four months later, the Department filed the current dependency petition alleging additional physical abuse, and the children were once again removed from the

custody of Mother and Father.  The record thus establishes an ongoing pattern of physical abuse by Father and, under these circumstances, there was not clear and convincing evidence that reunification would be in the children's best interest. (§ 361.5, subd. (b)(3).)[11]

## DISPOSITION

The petition is denied on the merits.


ZELON, J.


We concur:


PERLUSS, P.J.


WOODS, J.

---

[11] Father also contends the court improperly denied his oral request for a bonding study, which he made after the court denied reunification services.  We find no abuse of discretion in the denial of Father's motion (see *In re Richard C.* (1998) 68 Cal.App.4th 1191), nor does Father demonstrate he was prejudiced by the denial of the motion.