*161
 
 Opinion
 

 SILLS, P. J.
 

 Raymond C. seeks extraordinary relief from the orders of the juvenile court referring the dependency case of his daughter, Brenda C., directly to a permanency planning hearing after denying him reunification services at the dispositional hearing. (Welf. & Inst. Code, §§ 300, subd. (e), 361.5, subd. (c).)
 
 [1]
 
 He claims the social services agency (SSA) was required to prove reunification services were not likely to prevent reabuse before the services could be withheld from him and it failed to do so. After reviewing the petition on its merits, we deny relief.
 

 Brenda C. was four months old in May 1996 when her parents, Raymond C. and April F., took her to the hospital for a condition related to streptococcus virus. A routine X-ray revealed multiple rib fractures, and upon further investigation numerous other fractures were discovered in various stages of healing. The parents were unable to explain Brenda’s injuries satisfactorily; they believed the injuries were caused by rough treatment from Brenda’s 15-month-old sibling, Joe. Doctors thought it was virtually impossible for a toddler to cause such severe injuries and opined they were indicative of battered child syndrome.
 

 A dependency petition was filed under section 300, subdivisions (b) (failure to protect) and (e) (severe physical abuse of a child under the age of five by a parent). Brenda was detained and, once released from the hospital, was placed with the maternal grandmother.
 

 When interviewed apart from the father, April admitted he had been violent with her in the past and could have caused the injuries. She described him as “controlling.” Further investigation revealed the father had, on several occasions, physically abused April. She described three incidents shortly before Brenda was detained where she observed the father treat Brenda roughly.
 

 The jurisdictional hearing was held in November 1996, and the allegations of the petition were found true. The dispositional phase spanned several days in December and January 1997. Through reports and testimony, the court received evidence from Dr. Hall, the father’s therapist; Dr. Alan Lieberman, April’s therapist; Dr. Fineman, the court-appointed evaluator of April under Evidence Code section 730; Jyothi Atluri, the social worker; April; and the father.
 

 
 *162
 
 Dr. Hall first saw the father in 1992 as a result of a domestic violence arrest involving his second wife. The 13 sessions in 1992 dealt with anger management. The father returned to therapy in August 1996 because he was exhibiting somatic symptoms of stress that had caused him to be placed on a disability leave from work. The focus of the therapy was anger management, not reunification. Dr. Hall was only vaguely aware that the father’s children had been removed from his custody. Dr. Hall did not see the father as a risk to his children and believed that he could benefit from ongoing therapy. But he admitted he had very little information about Brenda’s abuse. “If I knew with certainty that Mr. C[] abused the child, on the one hand I would say that he could profit from counseling, lead into reunification. But on the other hand, as a child advocate I’m not sure that I would recommend that they be reunified unless I could say with certainty that he would not abuse the child again.”
 

 April had seen Dr. Alan Lieberman several times, both alone and with the father, for therapy. April blamed the father for Brenda’s injuries; the father claimed he did not know how the injuries occurred. April told Dr. Lieberman the father refused to come to any more sessions, and she stopped coming also.
 

 April was evaluated by Dr. Kenneth Fineman pursuant to Evidence Code section 730; he thought a reunification plan for April and Brenda could prevent reabuse, but only if April terminated her relationship with the father.
 

 The social worker recommended no reunification services be offered to the parents because neither one had taken responsibility for Brenda’s injuries or had even addressed the cause of her injuries in counseling. The father had been uncooperative with the social worker’s investigation, but the information she gathered portrayed the father as a violent person. The social worker talked to the father’s 16-year-old daughter from a previous marriage; she had lived with her father and April until October 1996, when she “ran away . . . because of all the problems that were going on in the residence.” The daughter reported her father had hit and pushed her in the past and she had seen him physically abuse April. The maternal grandmother told the social worker the father had a history of beating April and she had had to intervene. The father had been arrested twice for assault and battery. Furthermore, the parents had visited Brenda only four or five times in six months; the social worker testified “It’s my belief that they don’t seem real motivated in having frequent contact with Brenda.”
 

 April testified she wanted to separate from the father but was fearful to do so because she never knew when he was going to start hitting her again. She
 
 *163
 
 could not explain why she went back to him after each of several separations. She testified he went everywhere with her and she did nothing by herself, including visiting Brenda.
 

 The father denied inflicting abuse on Brenda, April, his teenage daughter or his former wife. He attempted to explain his sporadic visitation on illness or the maternal grandmother.
 

 The juvenile court refused reunification services to the parents based on a finding by clear and convincing evidence that Brenda had been the victim of severe physical abuse inflicted by a parent (§ 300, subd. (e)). The court stated, “I did receive all the reports ... but I think that ... the most important impact of all the evidence was what I heard from the parents, and . . . [that] is what led me to conclude that neither of [them] should be given reunification services.” A permanency planning hearing was scheduled for May 27, 1997.
 

 The father complains the juvenile court erroneously placed the burden on the parents to prove reunification services would be likely to prevent reabuse; he claims the SSA must prove reunification services would
 
 not
 
 prevent reabuse before they can be refused to a parent whose child has been made a dependent under section 300, subdivision (e). We disagree.
 

 The goal of the juvenile dependency system is the preservation of the family, whenever possible. To this end, parents whose children are removed from their custody are offered services designed to eliminate the conditions leading to loss of custody and to facilitate reunification of parent and child. The Legislature has recognized, however, “that it may be fruitless to provide reunification services under certain circumstances” set forth in section 361.5, subdivision (b).
 
 (Deborah S.
 
 v.
 
 Superior Court
 
 (1996) 43 Cal.App.4th 741, 750 [50 Cal.Rptr.2d 858].) Relevant here, the Legislature has stated reunification services need not be provided when the court finds, by clear and convincing evidence, that the child was made a dependent because she is under the age of five and has suffered severe physical abuse because of the conduct of the parent. (§ 361.5, subd. (b)(5).)
 

 Given a finding under section 300, subdivision (e), the juvenile court is directed to hold a dispositional hearing to decide whether services should be offered. It must
 
 not
 
 order services
 
 unless
 
 it finds, “based on competent testimony, those services are likely to prevent reabuse . . . .” (§361.5, subd. (c).) The statute directs the probation officer (in some counties,
 
 *164
 
 including this one, the social worker) to “investigate the circumstances leading to the removal of the minor and advise the court whether there are circumstances which indicate that reunification is likely to be successful or unsuccessful . . . Some of the factors indicating that reunification services are unlikely to be successful are “[t]he failure of the parent to respond to previous services, ... a past history of violent behavior, or testimony by a competent professional that the parent’s behavior is unlikely to be changed by services . . . .”
 
 {Ibid.)
 

 Thus, once SSA proves by clear and convincing evidence that a dependent minor falls under subdivision (e) of section 300, the general rule favoring reunification services no longer applies; it is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. If the court then chooses to offer services, it must make a finding that they are likely to prevent reabuse of the child, and this finding must be supported by substantial evidence. While SSA has the statutory duty to investigate and present the court with information about the prognosis for a successful reunification, it is not required to prove the services will be unsuccessful.
 

 The father claims the testimony of Dr. Hall and Dr. Fineman, both of whom thought the parents could benefit from reunification services, compelled the juvenile court to reach a different conclusion. But the testimony of “competent professionals” is only one factor suggested by the statute. The father’s past history of violent behavior and his failure to respond to services provided to him both in 1992 and during the seven-month period from detention to the dispositional order are also statutory factors and indicate that reunification services are unlikely to be successful.
 

 The father also claims the social worker failed to perform her duty to investigate the likelihood of successful reunification as required by section 361.5, subdivision (c). Citing
 
 In re Rebekah R.
 
 (1994) 27 Cal.App.4th 1638 [33 Cal.Rptr.2d 265], he claims the social worker ignored the opinions of the experts and substituted her own conclusion.
 

 The father misses the mark. In
 
 Rebekah R.,
 
 there was a dearth of evidence relevant to the likelihood of a successful reunification on which the court could have based its refusal of services. Here, the social worker provided the court with ample evidence on the issue. The social worker’s conclusion that reunification services were unlikely, to be successful did not, of course, bind the court in any way; it had the contrary opinions of experts and all the other evidence before it.
 

 
 *165
 
 The juvenile court properly refused services to the father and set a permanency planning hearing. The petition is denied.
 

 Wallin, J., and Rylaarsdam, J., concurred.
 

 [1]
 

 All statutory references are to the Welfare and Institutions Code.