Filed 10/25/13  In re Sebastian S. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re SEBASTIAN S., a Person Coming Under the Juvenile Court Law. | D064158 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1119) |
| v. | |
| THOMAS S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Carolyn M. Caietti, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Caitlin E. Rae, Deputy County Counsel, for Plaintiff and Respondent.

Thomas S. appeals orders made at the jurisdictional and dispositional hearing regarding his son, Sebastian S.  He contends the court erred by finding true allegations under Welfare and Institutions Code section 300, subdivision (e)[1] that he had severely physically abused Sebastian and by denying him reunification services.  We affirm the orders.

---

1       All further statutory references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 2013, the San Diego County Health and Human Services Agency (the Agency) petitioned under section 300, subdivision (a) on behalf of two-month-old Sebastian, alleging he had bruising on his face and five healing rib fractures consistent with nonaccidental trauma.

Sebastian's mother, Rebecca S., was employed by the United States Navy, and Thomas was Sebastian's primary caregiver. When Rebecca returned home from work on January 23, she noticed Sebastian had a red mark on his face. Thomas told her that during "tummy time" Sebastian may have lay on his pacifier and Rebecca accepted this explanation. The next day the mark had become a bruise and, the following day, during a well-baby appointment, their pediatrician inquired about the bruise. With Thomas and Rebecca's agreement, the pediatrician ordered blood work and a bone survey. These tests revealed Sebastian had healing fractures of the right sixth, seventh and eighth ribs and the left 10th and 11th ribs.

Rebecca said she knew Thomas would never hurt Sebastian, and she was not concerned about how he cared for him. She believed the injuries might have occurred during birth. Rebecca said Sebastian used to cry and scream as though he was being hurt, but he had been much better during the past month after they switched from breast milk to a different formula. Thomas said Sebastian was a fussy baby, and the doctor had told them Sebastian had gas and had shown them how to massage his abdomen to ease the pain. Rebecca and Thomas also said Sebastian may have hit his face on Thomas's glasses when Thomas was holding him. In addition, Thomas said about three weeks earlier he had fallen when holding Sebastian, but he had not hit the floor and he held Sebastian tightly. Thomas told the social worker he had a child welfare history in Michigan regarding his and his former wife's six-year-old son, Brady S.

2

The parents told the child abuse pediatrician that Sebastian's other cheek had been bruised a month earlier. They said Sebastian had been a very fussy baby and their pediatrician had suggested a different formula and various techniques to help. The child abuse pediatrician said the bruises and rib fractures were very concerning for nonaccidental trauma and for physical abuse. The court ordered Sebastian detained in foster care.

A follow-up skeletal survey showed Sebastian had eight additional fractures, all with evidence of healing. The child abuse pediatrician said the fractures and facial bruises indicated at least two different episodes of trauma. The Agency filed an amended petition, adding an allegation under section 300, subdivision (e) that Sebastian had sustained four right anterior lateral healing rib fractures, four left anterior lateral healing rib fractures, four right posterior healing rib fractures and two left posterior healing rib fractures. The petition further alleged the injuries indicated at least two different episodes of trauma and two episodes of facial bruising, and the injuries were inflicted by the parents.

The social worker reported that in 2006, Thomas's son Brady had had a spiral fracture of his left thigh and a broken arm when he was 24 days old. Michigan authorities had not removed Brady from his parents because it was determined there was insufficient evidence to show the parents had caused the injuries. In 2010, there was a further child welfare referral in Michigan involving allegations that Thomas had chased Brady's mother's former boyfriend while driving a car at high speed with Brady in the car, and he had destroyed property at the mother's house in Brady's presence. The child welfare agency had referred Thomas to anger management and parenting classes.

Thomas questioned whether there was a medical reason for Sebastian's injuries. Both parents began participating in voluntary services, including parenting classes, a child abuse group

3

and therapy. They visited Sebastian twice each week and called the foster parent every day. Thomas's therapist believed Thomas was in denial and said he was defensive and minimized problems. Thomas admitted he may have used too much pressure on Sebastian and said he wanted to learn how to care for his child properly. He said he believed he may have injured Sebastian when he lifted him out of a child carrier, and he reported he was learning to deal with anger and developing coping strategies to deal with frustration.

At the jurisdictional and dispositional hearing, after considering the evidence and argument by counsel, the court found true the allegations under section 300, subdivision (e), dismissed the allegations under section 300, subdivision (a), and amended the petition to indicate the injuries were inflicted by Thomas. The court declared Sebastian to be a dependent of the court, removed custody from the parents and ordered reunification services for Rebecca, but denied them for Thomas.

DISCUSSION

I

Thomas contends the court erred by finding the allegations of the petition under section 300, subdivision (e) to be true. He argues substantial evidence does not support the allegation that he inflicted Sebastian's injuries.

A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence. (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1036-1037.) "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also '. . . view the record in the light most favorable to the orders of the juvenile court.' " (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.) The appellant bears the burden to show the

4

evidence is insufficient to support the court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Section 300, subdivision (e) provides a child comes within juvenile court jurisdiction if the court finds the child was under the age of five and suffered severe physical abuse by a parent. Substantial evidence supports the court's finding under section 300, subdivision (e) that two-month-old Sebastian suffered severe physical abuse. The first examination revealed he had five rib fractures. He also had facial bruises. The second examination showed eight additional rib fractures. All of the fractures were acute in nature and in stages of healing. The child abuse pediatrician reported there had been at least two different episodes of trauma and the facial bruises also showed two different episodes. She was of the opinion that the parents' explanations of possible accidental injury could not explain Sebastian's injuries, but that the lateral rib fractures were consistent with forcible squeezing and the posterior fractures with shaking and grabbing and highly specific for inflicted injury. Thomas was Sebastian's primary caregiver and cared for him when Rebecca was working. Thomas said Sebastian was a fussy baby and, during therapy sessions, admitted he had sometimes gotten frustrated when Sebastian cried and may have used too much pressure when handling him. The medical evidence plus Thomas's lack of explanation for how Sebastian could have been so severely injured while in his care provides sufficient support for the finding under section 300, subdivision (e).

II

Thomas asserts the court erred by not providing reunification services. He argues the court should have ordered services for him under section 361.5, subdivision (c).

Section 361.5, subdivision (b)(5) states reunification services need not be provided when the court finds by clear and convincing evidence "[t]hat the child was brought within the

5

jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent or guardian."  Section 361.5, subdivision (c) provides in part:

> "In deciding whether to order reunification in any case in which this section applies, the court shall hold a dispositional hearing.  The social worker shall prepare a report that discusses whether reunification services shall be provided. . . .

The court is required to not offer services when the child was brought within the court's jurisdiction under section 300, subdivision (e) unless it finds ". . . based on competent testimony, those services are likely to prevent reabuse or continued neglect of the child or that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent.  The social worker shall investigate the circumstances leading to the removal of the child and advise the court whether there are circumstances that indicate that reunification is likely to be successful or unsuccessful and whether failure to order reunification is likely to be detrimental to the child."  (§ 361.5, subd. (c).)

The parent bears the burden of showing that services would likely prevent reabuse. (*Raymond C. v. Superior Court* (1997) 55 Cal.App.4th 159, 163-164.)

Thomas did not present competent evidence that it would be in Sebastian's best interests to offer services to him.  Thomas's therapist said Thomas was in denial, minimized problems and continued to be defensive about the allegations.  She did not say that services were likely to prevent reabuse.  Further, Thomas presented no evidence about what he had learned in the parenting class he had attended or show that he and Sebastian were so bonded that not providing services would be detrimental to Sebastian.

6

Thomas had a significant child welfare history with his older son, Brady, for whom he was the primary caretaker. In 2006, Brady had sustained spiral fractures to his left femur and left radius when he was 24 days old. Brady's mother had said the family cat had pushed Brady off a couch onto the floor, but hospital personnel said the injuries could not have occurred the way she suggested. The child welfare services agency in Michigan opened a case, but did not remove Brady from his parents. Then in 2010, there was an incident when Thomas drove at high rates of speed while Brady was in the car and became so enraged that he destroyed property at Brady's mother's house while Brady was present. The Michigan social worker said Thomas had anger management issues, minimized issues and appeared somewhat deceptive when he was interviewed. Thomas did not present evidence that he would benefit from reunification services, that services were likely to prevent reabuse or that not providing services would be detrimental to Sebastian. He has not shown the court erred by denying services to him.

## DISPOSITION

The orders are affirmed.

HUFFMAN, J.

WE CONCUR:

MCCONNELL, P. J.

BENKE, J.