Filed 6/24/15  Stephanie C. v. Super. Ct.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STEPHANIE C., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F071242 <br><br> (Super. Ct. No. 14CEJ300339-1) <br><br><br> **OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Kimberly J. Nystrom-Geist, Judge.

Judith A. Sanders for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and David F. Rodriguez, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Detjen, Acting P.J., Franson, J. and Peña, J.

Stephanie C. seeks extraordinary writ relief from the juvenile court's order setting a Welfare and Institutions Code section 366.26 hearing[1] as to her one-year-old son Malachi. Stephanie contends there is insufficient evidence to support the juvenile court's jurisdictional findings under section 300, subdivisions (b) (failure to protect) and (e) (severe physical abuse) and its dispositional order denying her reunification services under section 361.5, subdivision (b)(5) (parent's conduct resulted in severe physical abuse). She asks this court to vacate the section 366.26 hearing and order the juvenile court to order reunification services and return Malachi to her custody. We deny the petition.

### PROCEDURAL AND FACTUAL SUMMARY

Stephanie and Francisco are a young married couple. Malachi is their first and only child. Stephanie and Francisco have no criminal history and no history of child abuse or neglect, domestic violence or drug or alcohol abuse.

On November 19, 2014, Stephanie took then-five-month-old son Malachi to the emergency room because he had apparent pain in both arms and was unable to move them. He had been evaluated two days before in the emergency room for a respiratory infection and discharged to Stephanie's care.

Radiographs of Malachi's upper extremities revealed multiple bilateral forearm fractures of different ages. Malachi's right forearm showed acute-appearing fractures of the distal radius and ulnar shaft and a nondisplaced proximal radial fracture. His left forearm showed a subacute fracture of the midshaft radius and an acute fracture of the distal radius. Radiologist Dr. Michael Myracle noted that the left forearm fractures implied more than one episode of injury.

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

Stephanie said she was Malachi's primary caregiver and had a history of postpartum "blues" and anxiety but was not taking medication for it. She was stressed by Malachi's changing behavior and lack of sleep. She started smoking cigarettes the week before and was trying to quit. She said Francisco was supportive of her and she denied that Malachi suffered any trauma to his arms. However, she was anxious and wanted to know what was wrong with him.

Malachi was admitted to the hospital for observation of suspected child abuse and neglect and was evaluated for other evidence of direct trauma and/or bone disorders. Doctors ruled out head injury, retinal hemorrhages and metabolic bone disorders. A bone survey confirmed the right and left forearm fractures and revealed a subacute left anterior sixth rib fracture. Dr. Myracle noted that the multiple fractures and their apparent differing ages were concerning for the possibility of child abuse but that the findings are not diagnostic of child abuse. He also noted that the forearm fractures were not typical child abuse fractures.

On November 20, 2014, Dr. Phillip Hyden, the child advocacy attending physician, evaluated Malachi at the bedside. Stephanie told Dr. Hyden that Malachi's arms began hurting the morning before. Francisco told him he was worried that Stephanie's parents, Celia and Martin, may have injured Malachi while they were caring for him. Francisco's mother, Carmen, was separately interviewed and was also concerned about Stephanie's parents. Stephanie expressed the same concern but about Carmen who she said had untreated bipolar disorder. No one could explain how Malachi sustained the fractures.

Dr. Hyden concluded that Malachi's fractures were highly concerning for nonaccidental trauma which had occurred on more than one occasion. He reported, "Although they are not classic fractures of child abuse, there is no explanation for their presence, and the parents are each concerned about their respective in-laws, indicating there is doubt on their part regarding the manner in which the injuries occurred." He also

3

reported that there was no prior complaint documented of upper extremity pain or loss of movement and that this had been corroborated by interviewing the emergency department staff. He recommended that the Fresno County Department of Social Services (department) and law enforcement investigate the cause of Malachi's injuries.

On November 20, 2014, Stephanie and Francisco were interviewed by police officers and social workers from the department. Stephanie said the only people who cared for Malachi other than herself and Francisco were her parents, her sister Roxanna, her sister-in-law Cecilia, and Carmen. She said that Carmen had heart problems but Celia (her sister-in-law) was always present to assist Carmen. Stephanie said she did not know how Malachi sustained his fractures as she was always careful with him. She did not believe any of her relatives injured him.

Stephanie said she and Francisco moved into an apartment approximately one and a half months before. Before that they lived with Carmen for approximately one and a half months. Prior to that they lived with her parents and Roxanna.

Stephanie said she did not know that Malachi had sustained fractures until she returned to the hospital with him on November 19, 2014. She knew his arms appeared to be sore about six days before that because her father told her that Malachi whined when he touched his arms while changing his clothes. She recounted an incident that occurred about a month before when she placed Malachi on the bed surrounded by pillows while she took a shower. He rolled off of the bed and onto a blanket and pillow but did not appear to be injured or in distress.

Francisco stated he worked two jobs and was not home often. He did not notice anything unusual about Malachi and did not know how he sustained his injuries. He did not believe anyone had harmed him. He said Stephanie told him about a week before that she heard a popping noise come from Malachi's arm. He did not know the details but did not observe any injuries to Malachi's arm and Malachi did not appear to be injured so they did not take him to the emergency room. He also said that about three weeks before

4

he was holding Malachi when Malachi accidentally slipped out of his arms and hit his head on a baby napper. He did not take Malachi to the doctor but monitored him closely and he appeared fine afterward.

Stephanie said that she and Francisco generally got along well but argued. They were never physical with each other. She had anxiety and "beginning" depression for which she saw a counselor for two sessions. The counseling helped her but she did not return. Francisco had an incident before she was pregnant. He lost his job and got into an argument with her. Police were called and he was involuntarily committed. After that incident, Francisco took an anger management class and utilized other medical resources. They had not had any other incidents.

Roxanna said that her mother Celia watched Malachi approximately one to two times a week. The last time was the week before. She did not know how any of the injuries occurred. She said Malachi was fine, rolling over and grabbing toys the previous few days. Occasionally Malachi spent the night and slept in a bassinette in Celia's room. Only she, Celia and Martin lived in the home and cared for Malachi.

Celia said Malachi stayed with her for five to six hours each time. She was changing Malachi's outfit about five days before when he began to cry and seemed to have pain in his arms. She did not notice any visible injuries and was not aware of the fractures.

That same day, social workers and police officers went to Stephanie and Francisco's home and took pictures. Officer Scheidt noticed that the bed from which Malachi fell was a full-sized mattress atop a box spring on the floor. The approximate height from the bed to the ground was 21 inches. He did not observe any hazards that would harm a child.

After speaking to Stephanie and Francisco, Scheidt placed a protective hold on Malachi pending further investigation.

On November 21, 2014, Malachi was discharged from the hospital into the care of a foster parent pending the results of the investigation. That same day, Carmen told a social worker that when Malachi was approximately two months old, Celia and Martin kept him overnight. When he was returned, he had bruises all over his buttocks. Carmen knew that he did not have bruises before he left because she changed his diapers. Stephanie and Francisco told her that Stephanie's parents would not hurt Malachi but Stephanie had told her that her father was abusive to her when she was growing up.

On November 24, 2014, social workers from the department conducted a meeting with the family to discuss Malachi's case. During the meeting, Martin demonstrated how he believed Malachi was injured using a "napper" swing that he brought to the meeting. He demonstrated how Malachi's arms could have been stuck between the swing arms and the stationary arms of the stand, causing his arms to fracture. Stephanie stated that the only incident in which she believed Malachi could have been injured was when he fell from the bed.

After the meeting, Stephanie and Francisco met privately with the social workers and stated they had been receiving threatening calls from Carmen who said she was willing to "[s]ay anything to get him," referring to Malachi. Francisco said that his mother was hysterical and he and his siblings believed she suffered from mental health problems. She had not, however, been diagnosed with any particular mental health condition. Francisco said his mother was not very strong and often picked Malachi up by his arms.

The department filed a section 300 dependency petition alleging Malachi came within the juvenile court jurisdiction under subdivisions (a) (serious physical harm), (b) (failure to protect), and (e) (severe physical abuse).

Detective J. Alexander was assigned Malachi's case for follow up investigation. He met with Dr. Hyden to discuss Malachi's injuries. Dr. Hyden estimated that the left midshaft fracture occurred seven to 10 days before based on the extent of callous

6

formation.  The other fracture on the left radius was more recent.  Dr. Hyden also said that Malachi's fractures were not necessarily indicative of the common types of child abuse injuries but he could not determine how they occurred.  He said they would not occur as the result of falling from a bed or falling while trying to stand.

On December 3, 2014, Detective Alexander went to Stephanie and Francisco's apartment.  He asked Stephanie how she dealt with the stress of caring for a baby.  She said she took several parenting classes prior to having Malachi.  She learned that when she got stressed, to put the baby down, take a deep breath and then pick the baby up and try to comfort him again.  She denied ever getting mad and hurting Malachi.  She did not know how Malachi was injured.  She and Francisco spoke to the other family members and she thought maybe he hurt himself in his swing.  She said he sometimes turned on his side and reached for the bar that is part of the frame.  He sometimes got his arm caught between the basket that is swinging and the arm that braces the swing.  She also told Alexander about how Malachi fell off of her bed.

Alexander looked at the swing and agreed that Malachi could have reasonably got his arm caught in the swing as Stephanie described.

Alexander also spoke to Carmen by telephone and she relayed her concerns about Martin.  She also told him about Malachi returning from their home with a bruised bottom.  She did not believe Stephanie or Francisco would hurt Malachi.

Alexander asked Stephanie about Carmen's story.  Stephanie said she did not know why Carmen made such a big deal about it.  She said she bathed Malachi before he went to her parents' home.  He splashed water onto his face, panicked, arched his back and slipped in his baby tub.  He struck his bottom on the center of the bathtub and sustained a bruise.  She told her mother about the bruise before she took Malachi to her.  She thought Carmen was trying to get her parents into trouble for some reason.

Stephanie explained that her father spanked her when she was little but she did not consider him abusive.  She said he did not spank Malachi.

7

Following his investigation, Alexander concluded it was unknown how Malachi was injured and there was no evidence that a crime had occurred. Alexander suspended any further investigation.

The juvenile court ordered Malachi detained pursuant to the petition and ordered the department to offer Stephanie and Francisco services and supervised visitation.

In its report for the jurisdictional/dispositional hearing, the department reported that Stephanie and Francisco initiated their services and their visits with Malachi went well. Malachi "[lit] up" and smiled when he saw them. Stephanie and Francisco were engaging for the entire visit and interacted with Malachi in a nurturing manner. The department recommended, however, that the juvenile court sustain the petition and deny Stephanie and Francisco reunification services under section 361.5, subdivision (b)(5) and (6). The department based its recommendation to deny services on Stephanie and Francisco's inability to explain Malachi's injuries.

The juvenile court set the matter for a contested hearing which was conducted over several sessions in March 2015. At the first session on March 18, 2015, the juvenile court withdrew the section 300, subdivision (a) counts and the recommendation to deny Stephanie and Francisco reunification services under section 361.5, subdivision (b)(6) at county counsel's request. The court also modified one of the facts supporting the subdivision (e) allegations at the request of county counsel.

Social worker Terrill Woods testified that the department filed allegations against Stephanie because she was Malachi's primary caregiver and he had injuries in different stages of healing. He believed Stephanie should have known that Malachi had fractures because he is her child and she is responsible for him. He said the department did not investigate Carmen. He believed the department investigated the possibility that Malachi was injured in his swing but he did not have any record of that and was not sure. He believed Stephanie or Francisco or someone they knew caused Malachi's injuries.

8

Wood also testified that he had not seen Malachi interact with his parents but was informed that the visits went well. He believed it would be detrimental to Malachi not to offer Stephanie and Francisco reunification services because he was bonded to them. However, he did not believe reunification services would prevent re-abuse. He had no knowledge of any physical manifestation of Malachi's injuries that should have led Stephanie and Francisco to believe he had been injured.

Stephanie testified that on November 17, 2014, she took Malachi to the doctor because he had a fever. During the examination, she asked the doctor about Malachi's arms because Malachi squirmed and made faces when she touched them. She was told Malachi reacted that way because he had a fever and babies tended to have muscle tenderness. She said the next day, Malachi was afebrile and happy and played with his toys. His arms were only tender when she touched his arms. He was also pushing himself up on the floor with his arms. However, on November 19, 2014, his demeanor had completely changed. She took him back to the hospital and he was examined by two doctors. She told the first doctor that Malachi's arms were still bothering him. The doctor touched his arms and said they were still tender because of his fever and would be tender for probably a week. However, a second doctor entered the examination room and Stephanie asked her to check Malachi's arms because she was still concerned. The second doctor thought Malachi's arms were too tender for a fever and ordered x-rays.

Stephanie further testified she believed Malachi was injured in the swing or by Carmen. She had never seen Malachi get his arms caught in the swing but had seen him grab the bars. She had not conducted any research to determine whether the manufacturer of the swing issued a recall. She believed Carmen may have injured Malachi because she held him with one arm. Stephanie asked her not to hold him that way and took him from Carmen when she did. She estimated Carmen last cared for Malachi on November 1, 2014. Stephanie did not notice Malachi cry or fuss when she grabbed his arms while changing his clothes after November 1, 2014.

9

Stephanie did not remember telling the police officer that her father told her Malachi's arms were sore. She remembered him telling her Malachi was fussy. Stephanie remembered her mother telling her that she was concerned about Malachi's arms around November 14, 2014, but Stephanie was not concerned because he was active and playing. Stephanie just thought he was fussy. Stephanie remembered telling Francisco she heard a "popping sound" from Malachi's finger not his arm. The popping occurred while she was pulling his hand through a long-sleeved shirt. He made a face but did not cry. She watched him the rest of the day and he seemed fine.

Roxanna testified that she once saw Malachi extend his arm behind him while sitting in the swing and reach one of the back supporting legs while the swing was not moving. She was not concerned that he might harm himself doing that. She said she was aware that Carmen had weak arms and various health ailments and believed it plausible that something could have happened to Malachi accidentally while he was in Carmen's care.

Social worker Jennifer Moore, author of the jurisdictional/dispositional report, testified the only factor that supported a denial of services to Stephanie and Francisco was the possibility that Stephanie or Francisco severely physically abused Malachi. She did not believe Stephanie and Francisco would benefit from reunification services because no one knew how Malachi was injured. She did not believe it would be detrimental to Malachi not to attempt reunification because of the severity of his injuries and the fact that no one knew how he was injured. She said the department did not investigate the cause of Malachi's injuries and had not ruled out the possibility that Malachi was injured by Carmen's inappropriate handling of him.

Francisco testified and denied injuring Malachi. He said he saw Carmen handle Malachi roughly by pulling him up by his arms. He never saw any physical signs of injury to Malachi's arms. He said he was not able to care for Malachi much because he worked long hours.

At the conclusion of the hearing, the juvenile court adjudged Malachi a dependent child under section 300, subdivisions (b) and (e) and denied Stephanie and Francisco reunification services under section 361.5, subdivision (b)(5). In ruling, the court stated that it did not find Stephanie's testimony credible because her accounts of when and how she learned that Malachi's arms were tender varied and were in conflict with the medical professionals. The court also found that Francisco's testimony was not credible with respect to when he and Stephanie realized Malachi's arms were injured and when they brought that to the doctor's attention. The court also noted that Stephanie and Francisco never mentioned Malachi's broken rib or tried to explain it.

The juvenile court set a section 366.26 hearing to select a permanent plan. This petition ensued.[2]

**DISCUSSION**

Stephanie contends that the juvenile court's assumption of jurisdiction over Malachi and its denial of reunification services was not based on evidence but rather her inability to explain how Malachi sustained his fractures. Absent evidence to support its findings and orders, she argues, the juvenile court's rulings must be vacated and Malachi must be returned to her custody. We disagree.

*Jurisdictional Findings*

In order to exercise its dependency jurisdiction over a child, the juvenile court must find by a preponderance of the evidence that the child is described by one or more of the subdivisions set forth in section 300. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) When the court makes multiple jurisdictional findings, as occurred here, we need only find substantial evidence supports one of them to uphold the court's exercise of its jurisdiction. (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876.)

---

[2] Francisco did not file a writ petition.

11

In this case, the juvenile court found that Malachi is a child described under subdivisions (b) and (e) of section 300. We conclude substantial evidence supports the juvenile court's subdivision (e) finding and therefore need not review the court's subdivision (b) finding.

A child is subject to the juvenile court's jurisdiction under section 300, subdivision (e) if the "child is under the age of five years and has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child." "Severe physical abuse" under subdivision (e), includes more than one act of physical abuse, each of which causes bone fracture. A child may not be removed from the physical custody of his or her parent on the basis of a finding of severe physical abuse unless the social worker has made an allegation of severe physical abuse. (§ 300, subd. (e).)

Stephanie contends the juvenile court's subdivision (e) finding is not sustainable because the department did not allege that Malachi suffered physical abuse and that she inflicted such abuse or reasonably should have known that someone else was inflicting it. Rather, she argues, those allegations were rescinded when the juvenile court modified the subdivision (e) allegation. Her argument lacks merit as we now explain.

The preprinted "Juvenile Dependency Petition" includes a page corresponding to the section 300 subdivision(s) alleged. The page is preprinted with a title and language directly out of the statute. So, in this case, for example, the petition includes a page entitled "SEVERE PHYSICAL ABUSE" under which the statutory language of subdivision (e) is set forth: "The child is under the age of five and has suffered severe physical abuse by a parent, or by any person known by the parent, and the parent knew or reasonably should have known that the person was physically abusing the child." Space is provided underneath for the department to state facts supporting the allegation.

The sentence that the juvenile court modified appears as the first sentence in the supporting facts section. It originally stated in full: "[Malachi], a five (5) month old infant, has suffered serious physical abuse at the hand of his mother, [Stephanie]." The juvenile court deleted the last prepositional phrase "at the hand of his mother, [Stephanie]." In doing so, the court merely modified a supporting fact. It did not alter the substance of the allegation.

Stephanie does not otherwise challenge the juvenile court's finding that Malachi suffered severe physical abuse by her or someone known to her. She does contend, however, there was insufficient evidence that she should have known that someone was physically abusing Malachi. She points out that Malachi was evaluated by a doctor on November 17, 2014, and that the doctor did not recognize that Malachi had been injured. She questions how she could have detected his injuries if a doctor did not. She also questions how she could have known that Carmen injured Malachi when there is no evidence that Carmen in fact did.

The juvenile court could infer based on the evidence that Stephanie knew or should have known that someone was physically abusing Malachi. As the juvenile court pointed out, Malachi would have been in pain given the severity and number of his injuries. Since Stephanie was with Malachi most of the time, holding, feeding and changing him, she would have known that he was in pain. The fact that the doctor did not detect Malachi's arm fractures on November 17, 2014, could be explained by the routine nature of the medical encounter (respiratory infection versus fracture), and the focus on the chief complaint (fever). With respect to Carmen, there is no evidence that she harmed Malachi. However, Stephanie is the one who first raised suspicion that Carmen may have injured Malachi. Therein lies evidence that Stephanie knew or reasonably should have known that Carmen was physically abusing him.

On this evidence, the juvenile court could find that Malachi is a child described under section 300, subdivision (e).

13

*Denial of Services*

Section 361.5, subdivision (b) provides that reunification services "need not be provided to a parent … when the court finds, by clear and convincing evidence, any of the following[.]" The statute then sets forth a list of circumstances that qualify for denial of services. (§ 361.5, subd. (b)(1)-(16).) Here, the juvenile court denied Stephanie reunification services under section 361.5, subdivision (b)(5).

Section 361.5, subdivision (b)(5) permits the denial of reunification services when the "child was brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent." The department bears the burden of establishing the foundational facts to support denial of services under the statute.

Thus, in recommending that the juvenile court deny a parent reunification services under section 361.5, subdivision (b)(5), the department bore the burden of proving by clear and convincing evidence that Malachi was under the age of five years and suffered severe physical abuse because Stephanie inflicted it or reasonably should have known that someone else was inflicting it. (*K.F. v. Superior Court* (2014) 224 Cal.App.4th 1369, 1384.)

Once the juvenile court finds, as it did here, that the child is as described by section 361.5, subdivision (b)(5), the general rule favoring services no longer applies and the juvenile court is prohibited from ordering reunification services "unless it finds that, based on competent testimony, those services are likely to prevent reabuse or continued neglect of the child or that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent." (§ 361.5, subd. (c).) The parent bears the burden of proving that services would be likely to prevent reabuse. (*Raymond C. v. Superior Court* (1997) 55 Cal.App.4th 159, 163-164.)

To assist the juvenile court in assessing the prognosis for successful reunification, section 361.5, subdivision (c) requires the agency to investigate the circumstances leading to the child's removal and advise the court whether there are circumstances that

14

indicate that reunification is likely to be successful or unsuccessful and whether failure to order services is likely to be detrimental to the child. Subdivision (c) of section 361.5 (subdivision (c)) identifies factors to consider: the parent's failure to respond to previous services, the fact that the child was abused while the parent was under the influence of drugs or alcohol, a past history of violent behavior, and testimony by a competent expert that the parent's behavior is unlikely to be changed. The court may also consider that a parent is no longer living with the abuser.

Stephanie does not challenge the sufficiency of the evidence to support a basis for denial of reunification services under section 361.5, subdivision (b)(5). Rather, she contends most of the factors the court may consider favor a finding that reunification services would be successful in her case. Stephanie does not contend that failure to attempt reunification would be detrimental to Malachi.

The problem Stephanie faces on this issue is that she stands in the position of one who had the burden of proof in the juvenile court. When "the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

In order to find error, this court would have to conclude that Stephanie presented competent testimonial evidence that compelled a finding that reunification services were likely to prevent Malachi's reabuse. Stephanie, however, did not present *any* evidence that reunification services were likely to prevent Malachi's reabuse. Thus, she failed to carry her burden of proof in the juvenile court and on appeal.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.

15