Filed 5/23/24  In re E.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.H., a Person Coming Under the Juvenile Court Law. | |
| | E082222 |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | (Super.Ct.No. J296884) |
| Plaintiff and Respondent, | OPINION |
| v. | |
| A.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

The juvenile court bypassed family reunification services for defendant and appellant A.H. (father) pursuant to Welfare and Institutions Code[1] section 361.5, subdivisions (b)(5) and (c)(3). Father contends the court erred in declining to order reunification services for him under section 361.5, subdivision (c)(3). We affirm.

PROCEDURAL BACKGROUND

On April 25, 2023, the San Bernardino County Children and Family Services (CFS) filed a petition on behalf of E.H. (the child), who was eight months old at the time. The petition alleged that the child came within the provisions of section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect). Specifically, the petition alleged that, while the child was in the care and custody of father and S.H. (mother), the child sustained an unexplained physical injury described as an acute right proximal femur fracture.

The social worker filed a detention report and stated that CFS received an immediate response referral alleging physical abuse and general neglect.[2] It was reported that the child was admitted to the hospital after suffering a femoral fracture. It was

_____

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

[2] The detention report concerned the child as well as one of mother's other children, A.H., who had a different father. This appeal only concerns the child.

2

further reported that father stepped out of the room to grab some wipes, when he heard the child crying. He found the child on the floor, and he believed the child rolled off the bed. Father and mother (the parents) denied witnessing the child fall.

On April 18, 2023, the social worker interviewed mother at the hospital. Mother indicated that she was caring for the child's half sibling when she heard the child begin to cry. Father told mother that the child had fallen off the bed. Mother said it was not until the following morning, while changing the child's diaper, that they observed him to be in pain.

The social worker also interviewed father, who indicated that he was changing the child's diaper on the bed and left the room to get wipes. Upon reentering the room, he saw the child lying on the floor crying. Father indicated that he checked the child for any visible injuries but did not observe any, so he put the child to bed. The social worker spoke with father again on April 20, 2023, as there were concerns about his explanation of the fall. This time, father reported that he placed the child close to the edge of the right side of the bed when he stepped away to look for wipes. Father reported that he left the room for approximately 30 to 60 seconds and then heard the child crying. He ran back to the room to find the child lying on the left side of the bed. On April 21, 2023, father offered another explanation and said the child's diaper was not being changed before the fall, and he was only getting the wipes to have them available for the night.

The social worker subsequently spoke with Dr. Jacobson at the hospital regarding the child's injury. The doctor reported concerns due to discrepancies in the parents'

3

explanation for the injury. She stated that the child's femoral fracture was inconsistent with the type of fall the parents claimed and that it was " 'highly unlikely' " the injury was caused by falling off the bed. The doctor concluded the injury to the child was suspicious for abuse.

The social worker also spoke with Dr. Barruga, who was from the hospital's forensic team. Dr. Barruga stated that the type of fracture the child sustained required significant force. Thus, she also opined that the parents' explanation of the child's injury was inconsistent with the type of injury the child had.

The social worker informed the parents of the need to detain the child. The child was approved for placement with the paternal grandparents, and the court issued a detention warrant.

On April 26, 2023, the court held a detention hearing and detained the child.

*Jurisdiction/Disposition*

On May 25, 2023, the social worker filed a jurisdiction/disposition report, recommending that the court sustain the petition and order reunification services to be provided to the parents. The social worker reported that she met with the parents on May 23, 2023, in the paternal grandparents' home. The social worker observed that father held the child the whole time she was present (approximately two hours). Father was loving and attentive to the child, and the child appeared to be bonded and comfortable with him. The child did not display any signs of fear or discomfort with him. Father reported that, on the night of the incident, he had given the child a bath and was getting him ready for

4

the night. He left the child on the bed and went to the living room, which was about 10 feet away. Father said he placed the child on the middle of the bed, and specifically said the child was not on the edge. Father reported that the child fell off the bed and said this was the first time this had ever happened. The parents checked the child for any injuries, but did not notice any, and he eventually stopped crying and fell asleep. The following day, they noticed the child having pain and decided to take him to the hospital.

The social worker reported that she received the initial report from the Children's Assessment Center (CAC), dated April 20, 2023. The report stated the child presented with " 'an impacted, acute right proximal femur fracture' " and that " '[t]hese types of fractures are typically the result of high energy trauma and are atypical of a short fall as is provided in this case.' " It concluded, " 'This finding is suspicious for inflicted injury.' " The CAC doctors requested additional information, including photographs from the scene of the incident, and stated that " 'further workup is warranted.' " Nonetheless, the social worker opined that the prognosis for this case was "good for the parents," noting that they appeared committed to the child and loved him, and the child "appeared to be bonded and did not display any distress with [his] parents." The social worker added that she had not received an updated report from the CAC.

The court held a jurisdiction/disposition hearing on May 31, 2023, and continued the matter to June 28, 2023, for the parties to receive more medical information. At the next hearing on June 28, 2023, the child's counsel filed a motion to amend the petition to add an allegation under section 300, subdivision (e) (severe physical abuse). The child's

5

counsel reported that, on May 11, 2023, one of the CAC doctors assessed the child again and found his fracture to be healing; however, the doctor advised that the child was at risk of growth issues, such as limb shortening, and that it was unclear if he would have issues with crawling and walking since he had not reached that stage of development yet. The court continued the matter to July 25, 2023.

On July 25, 2023, CFS filed an amended petition which added an allegation under section 300, subdivision (e), stating that the child had suffered severe physical abuse by a parent, in that he sustained an unexplained acute right proximal femur fracture while in father's care and custody. The social worker attached an Additional Information to the Court memorandum (CFS 6.7) and an addendum to the medical report from the CAC. The addendum stated the photographs provided by the police were reviewed and the child's fractured femur was " 'atypical of such a short fall' " (two feet, pursuant to the photographs). The doctors concluded that " '[t]his finding is highly suspicious for inflicted injury' " and stated that " '[a]n untreated proximal femur fracture places the child at risk for limb length discrepancy and abnormal motor development.' " The social worker reported that, based on this new information, it was determined the child's injury met the criteria for a section 300, subdivision (e) allegation. Thus, she filed an amended petition and changed the recommendation to no reunification services for father. The social worker reported that she called father to notify him of the amended petition, and once he was made aware, he hung up the phone. She attempted to call him back twice, but he did not answer.

The court held a hearing on July 25, 2023, and acknowledged that there was an update and CFS filed an amended petition and changed its recommendation to no reunification services for father. The court held a detention hearing the following day. Counsel for mother and father acknowledged receipt of the amended petition, and father entered a denial.

The court held the next hearing on September 25, 2023, and the court accepted into evidence the detention report, the jurisdiction/disposition report, the amended petition, and the CFS 6.7 memorandum. Father entered into evidence a medical report dated August 28, 2023, showing that the grandparents took the child in for an evaluation of his right femur. The report indicated the child was previously diagnosed with a fractured femur and had now returned to normal activities. X-rays that were taken showed "a well healed right femur." The report further stated that the child was "expected to do well in [the] future." Accordingly, father objected to the allegations in the petition and to the bypass of services. He asked the court to consider granting him services since the child's broken femur had healed completely and he was expected to live "a full and normal life." Father denied that this was a non-accidental injury, but stated, that even if it was, he should still be entitled to services. Father noted that CFS's original recommendation was for the court to sustain a section 300, subdivision (a) allegation and offer him services. He claimed that "[n]othing has really changed between now and then, other than the CAG's [*sic*] opinion that this child would suffer physical disfigurement." He argued that such assessment was discounted by the recent evaluation.

7

Therefore, father asked the court not to find the section 300, subdivision (e) allegation true, but rather the subdivision (a) allegation, so that he could receive services.

The attorney representing CFS conceded that the injury had healed, but reminded the court that the type of femur fracture the child sustained was inconsistent with the parents' account about what had occurred. She further argued that, under section 361.5, subdivision (c), the court was prohibited from ordering services unless it found, based on competent evidence, that services were likely to prevent reabuse. The attorney stated there was no competent evidence that services were likely to do so. Thus, she asked the court to find all the allegations true and deny services to father, pursuant to section 361.5, subdivision (b).

The court found the allegations true and found father to be the child's presumed father. With regard to services, the court stated the medical evidence demonstrated "this was a single act of abuse, that if left untreated, it would have caused permanent physical disfigurement" based on the type of injury sustained. The court added, "I don't really have any evidence that services are likely to prevent reabuse or that the child is so bonded that it would be in his best interest to offer services." The court then adopted the recommended findings, declared the child a dependent, removed him from the parents' custody, and ordered services for mother, but bypassed services for father pursuant to section 361.5, subdivision (b)(5).

DISCUSSION

The Court Properly Bypassed Father's Reunification Services

Father argues the court erred when it bypassed his reunification services under section 361.5, subdivision (c)(3), since the only substantive evidence in the record was the May 2023 jurisdiction/disposition report in which the social worker opined that: (1) the prognosis for reunification was good, which implied that services would likely prevent reabuse; and (2) the child was bonded with him, which implied that the child would suffer detriment as a result of the no services order. Father claims this evidence was uncontroverted and compels a finding in his favor, as a matter of law. At the same time, he claims the social worker failed in her duty under section 361.5, subdivision (c)(3) to advise the court regarding the prospects for reunification and the bond between him and the child. We conclude the court properly bypassed father's reunification services under section 361.5, subdivision (b)(5).

A. *Relevant Law*

"Reunification services must be provided to the mother and statutorily presumed father of children who have been removed from their parents' custody, unless a statutory exception applies. [Citations.] The statutory exceptions are contained in subdivision (b) of section 361.5, which provides that '[r]eunification services need not be provided' if the court finds 'by clear and convincing evidence' that any of 17 enumerated bypass provisions apply." (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1141 (*A.E.*).) Section 361.5, subdivision (b)(5), provides that reunification services need not be provided to a parent if

9

the court finds by clear and convincing evidence that the child was brought within the jurisdiction of the court under subdivision (e) of section 300 (severe physical abuse of a child under age five) because of the conduct of that parent.

Section 361.5, subdivision (c)(3), provides: "In addition, the court shall not order reunification in any situation described in paragraph (5) of subdivision (b) unless it finds that, based on competent evidence, those services are likely to prevent reabuse or continued neglect of the child or that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent. The social worker shall investigate the circumstances leading to the removal of the child and advise the court whether there are circumstances that indicate that reunification is likely to be successful or unsuccessful and whether failure to order reunification is likely to be detrimental to the child." "While [the agency] has the statutory duty to investigate and present the court with information about the prognosis for a successful reunification, it is not required to prove the services will be unsuccessful." (*Raymond C. v. Superior Court* (1997) 55 Cal.App.4th 159, 164 (*Raymond C.*).) Rather, "[o]nce the juvenile court determines that the bypass provision of subdivision (b)(5) of section 361.5 applies, the burden shifts to the parent to show that services are likely to prevent reabuse." (*In re Raul V.* (2022) 82 Cal.App.5th 290, 300 (*Raul V.*); *A.E.*, *supra*, 38 Cal.App.5th at p. 1148; see *In re T.R.* (2023) 87 Cal.App.5th 1140, 1148.)

B.  *Father Failed to Show That Services Were Likely to Prevent Reabuse*

Father does not challenge the juvenile court's jurisdictional findings, including the finding by clear and convincing evidence that the petition's allegations under section 300, subdivision (e), are true.  Consequently, he also does not challenge the court's finding by clear and convincing evidence that section 361.5, subdivision (b)(5), applies to him.  Instead, father argues that the court erred in denying him services under section 361.5, subdivision (c)(3).  He claims the only evidence in the record addressing section 361.5, subdivision (c)(3), was the social worker's observation, in the jurisdiction/disposition report, that the child was bonded with father and her opinion that the prognosis for reunification was good.  Father claims this evidence was uncontroverted and compels a finding in his favor, as a matter of law.  He also claims the social worker failed to perform her duty under section 361.5 subdivision (c)(3), to advise the court regarding the prospects for reunification and the bond between him and the child, in support of the no services recommendation.

Father's claims are meritless.  The social worker had a statutory duty to investigate the circumstances and advise the court on whether reunification was likely.  (§ 361.5, subd. (c)(3); *Raymond C.*, *supra*, 55 Cal.App.4th at p. 164.)  While the social worker did not expressly advise the court on whether reunification was likely, the social worker did conduct multiple interviews of both parents, relatives, and the doctors who examined and/or evaluated the child's injury and opined that reunification services were not warranted in this case.  As father points out, the social worker did initially recommend

11

services, opining that the prognosis for this case was good and that the child was bonded with him. However, this assessment did not take into account the addendum to the CAC report, which was received *after* the jurisdiction/disposition report was filed. The doctors submitted the addendum after viewing photographs from the police which showed the alleged fall from the bed was only two feet. The doctors stated the child's fractured femur was "atypical of such a short fall" and concluded that "[t]his finding is highly suspicious for inflicted injury." Based on the doctors' assessment, the social worker added the section 300, subdivision (e) allegation and changed the recommendation to no services for father.

Thus, the social worker impliedly determined that reunification was unlikely because there was insufficient evidence to show that services were likely to prevent reabuse or that lack of services would be detrimental to the child. Therefore, contrary to father's claims, the social worker did investigate and advise the court that the provision of services should not be granted, as father fell within the bypass provisions of section 361.5, subdivision (b)(5) (father does not contest this determination) and did not fall within the exceptions set forth in section 361.5, subdivision (c)(3). The juvenile court expressly made these same findings. Once it was established that father fell within the provisions of section 361.5, subdivision (b)(5), he bore the burden of proving, through competent evidence, that reunification services were likely to prevent reabuse or that failure to try reunification would be detrimental to the child because he was closely and positively attached to father. (§ 361.5, subd. (c)(3); *Raul V.*, *supra*, 82 Cal.App.5th at p.

12

300; *A.E.*, *supra*, 38 Cal.App.5th at p. 1148.) The only evidence father submitted was a medical report showing that the child was evaluated, and the x-rays showed his broken femur had healed and he was "expected to do well in [the] future." This evidence did nothing to show that services were likely to prevent reabuse or that the failure to try reunification would be detrimental to the child. We also note that father continued to deny a non-accidental injury had occurred, even in light of the doctors' assessment that the child's fracture was inconsistent with falling off the bed and the injury was highly suspicious for abuse or "inflicted injury." On these facts, it is difficult to imagine how services would have been likely to prevent reabuse. (See *In re A.M.* (2013) 217 Cal.App.4th 1067, 1077-1078.)

We conclude the court properly found there was no evidence that services were likely to prevent reabuse or that the child was so bonded with father that it would be in his best interest to offer services.

## DISPOSITION

The court's dispositional orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                                                           J.

We concur:

RAMIREZ _____
                          P. J.

MENETREZ _____
                          J.

13